UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-cv-60246-RKA

ROBERT SEIDE,

    Plaintiff,

v.

POLLACK & ROSEN, P.A. and
HOMESTEAD HOSPITAL, INC.

    Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM AND INCORPORATED
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Defendants, Homestead Hospital, Inc. (the "Hospital") and Pollack & Rosen, P.A. (the "Firm"), by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 7.1, move for entry of an order dismissing the Amended Complaint filed in this action by Plaintiff, Robert Seide ("Seide"), for failure to state a claim with respect to which relief can be granted. The Amended Complaint asserts claims premised on the federal Fair Debt Collections Practices Act ("FDCPA") and the Florida Consumer Collections Practices Act ("FCCPA"); however, these statutes are inapplicable to the debt that has been alleged and, even if they were, insufficient facts have been alleged to show a plausible claim. Accordingly, the Amended Complaint fails to state a claim with respect to which relief can be granted and, for that reason, it properly should be dismissed.

    **I.**    **Pertinent Allegations of the Amended Complaint.**

The Amended Complaint alleges that, on or about February 2, 2019, Seide was injured "in the course and scope of [Seide]'s employment that required medical treatment and/or services (the

'Work-Injury')." *See* Am. Compl., ¶ 11. The Amended Complaint alleges that, on or about February 14, 2019, Seide was treated by the Hospital and that "the only medical services provided to [Seide] by [the Hospital] were for treatment of the Work-Injury." *See* Am. Compl., ¶ 12. The Amended Complaint alleges that, on March 26, 2019, Seide "filed a petition for workers' compensation benefits with the State of Florida Division of Administrative Hearings Office." *See* Am. Compl., ¶ 13. The Amended Complaint alleges that Seide advised the Hospital that the treatment being sought by Seide was for the "Work-Injury." *See* Am. Compl., ¶ 14. The Amended Complaint alleges that the Hospital "charged a fee for the provision of [the Hospital's] respective medical services for treatment of the Work-Injury (the 'Consumer Debt')." *See* Am. Compl., ¶ 15. The Amended Complaint alleges that the medical treatment provided to Seide was for Seide's "personal benefit." *See* Am. Compl., ¶ 16. The Amended Complaint alleges that "[t]he Consumer Debt arose from [Seide]'s work-related accident and injuries." *See* Am. Compl., ¶ 17. The Amended Complaint alleges that the "Consumer Debt was the responsibility of Plaintiff's employer and/or the insurance carrier of Plaintiff's employer" and that the Hospital knew that "it did not have any statutory or contractual right to attempt to collect the Consumer Debt from Plaintiff." *See* Am. Compl., ¶¶ 18, 20. The Amended Complaint alleges that the Firm sent a collection letter to Plaintiff seeking to collect the debt from the Plaintiff. *See* Am. Compl., ¶ 31. Based on these allegations, the Amended Complaint attempts to assert three claims: (i) an alleged violation of the FDCPA by the Firm for falsely representing that Seide was responsible for the alleged debt; (ii) an alleged violation of the FCCPA by the Firm for allegedly attempting to collect a debt that is not legitimate; and (iii) an alleged violation of the FCCPA by the Hospital for disclosing the debt to the Firm. None of these theories of recovery is viable because the FDCPA and FCCPA are inapplicable to the debt alleged. Additionally, even if the obligation could be

2

considered a debt under the FDCPA and FCCPA, insufficient facts have been alleged to state a plausible claim for relief.

## II.     Legal Standard on Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court must accept the plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Brinson v. Welsh*, 709 Fed. Appx. 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678).

## III.    The Amended Complaint Fails to State a Plausible Claim for Relief Because the Obligation at Issue is not a "Debt" under the FDCPA and FCCPA.

"To recover under both the FDCPA and the FCCPA . . . a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010); *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268,

1271–73 (M.D. Fla. 2016), *aff'd*, 656 Fed. Appx. 474 (11th Cir. 2016) (same). Both statutes define a "debt" as:

> any obligation or alleged obligation of a ***consumer to pay money arising out of* <u>a transaction</u> *in which the money, property, insurance, or services which are the subject of* <u>the transaction</u> *are* <u>primarily for personal, family, or household purposes</u>**, whether or not such obligation has been reduced to judgment.

*See* 15 U.S.C.A. § 1692a (emphasis added); Fla. Stat. § 559.55 (emphasis added). Both statutes also define a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *See* 15 U.S.C.A. § 1692a; Fla. Stat. § 559.55. The reason why the Amended Complaint fails to state a claim under the FDCPA or FCCPA is that the transaction at issue was primarily for employment purposes.

> **A.   *A payment obligation arising from a transaction that was not primarily for personal, family, or household purposes is not a "debt" under the FDCPA or FCCPA as a matter of law.***

A payment obligation arising from a transaction that was not primarily for personal, family or household purposes is not a "debt" under the FDCPA or FCCPA. In determining whether a transaction is primarily for personal, family or household purposes, "a court should examine the purpose or intent behind entering into the transaction." *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1305 (S.D. Fla. 2016). This analysis necessarily is "fact-specific," and "courts should examine 'the transaction as a whole' to determine if it was primarily consumer or commercial in nature." *Id.* at 1306. In *Derbin v. Keith M. Nathanson, PLLC*, No. 2:12-CV-670-FTM-29, 2013 WL 5490176, at *3 (M.D. Fla. Sept. 30, 2013), an employee sued his employer, and the court referred the dispute to arbitration and ordered each party to pay half of the cost of the arbitration. *Id.* at *1. The arbitration did not take place, but the arbitrator pursued collection of a fee from the employee. *Id.* In pursuit of his fee, the arbitrator sent letters to the employee, and

the employee filed suit claiming the letters violated the FDCPA. *Id.* at *2. The *Derbin* court granted summary judgment to the arbitrator because it found that the debt at issue was employment related and not "primarily for personal, family or household purposes." *Id.* at *3.

*Derbin* is one of many cases to find employment-related obligations not to be primarily for personal, family or household purposes. *See, e.g., Berman v. GC Servs. Ltd. P'ship*, 146 F.3d 482, 487 (7th Cir. 1998) ("unemployment insurance contributions do not qualify as 'debts' under the FDCPA because they do not satisfy the statutory requirement that 'the money, property, insurance, or services' underlying the transaction be 'primarily for personal, family, or household purposes.'"); *Orenbuch v. Leopold, Gross & Sommers, P.C.*, 586 F. Supp. 2d 105, 107–08 (E.D.N.Y. 2008) (alleged obligation to repay employer for over-paid salary not a debt under the FDCPA); *Saylor v. Pinnacle Credit Services, LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va. 2015), *aff'd*, 667 Fed. Appx. 829 (4th Cir. 2016) (obligation related to purchases for carpentry business not a "debt" under the FDCPA).

In the Amended Complaint, Seide added an allegation that the treatment provided by the Hospital "was for [Seide]'s personal benefit." *See* Am. Compl. ¶ 16. However, this additional allegation is merely a conclusion with no additional underlying factual allegations and does not allege that the medical services were "primarily" for purposes of Seide's personal benefit. As stated above, the FDCPA and FCCPA only apply to obligations that were "primarily" for personal purposes. In attempting to re-plead the Complaint, Seide purposefully chose not to allege that the services were "primarily" for personal purposes - - perhaps because doing so would jeopardize the workers' compensation benefits that have been received or that are being sought in the pending workers' compensation case. Either way, Seide is responsible for properly pleading a claim and should not be permitted to take all sides in this case. More importantly, no facts have been alleged

that would support the alleged conclusion that the services were for personal purposes. Instead, all that is alleged is that Seide suffered a work-place injury with treatment being alleged to be available as a benefit under Florida Workers' Compensation Laws. However, treatment under workers' compensation is primarily for employment purposes as detailed below.

### B.     Treatment under the Florida Workers' Compensation Law is primarily for employment purposes as a matter of law.

Florida's Workers' Compensation Law is meant "to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." *See* Fla. Stat. § 440.015.  Moreover, Florida's Workers' Compensation Law extends only to employees and employers: "Every employer and employee as defined in s. 440.02 shall be bound by the provisions of this chapter." *See* Fla. Stat. § 440.03. Workers' compensation benefits are only available where "the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment." Fla. Stat. § 440.09.

Where there has been a work-related injury, Florida Workers' Compensation Law requires that "the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require . . . ." Fla. Stat. § 440.13. However, "[r]ecreational or social activities are not compensable unless such recreational or social activities are an expressly required incident of employment and produce a substantial direct benefit to the employer beyond improvement in employee health and morale that is common to all kinds of recreation and social life." Fla. Stat. § 440.092. An employee receiving care under Florida Workers' Compensation Law cannot freely choose the physician of his or her choice. Instead, care is directed by the employer's insurance carrier except that "the carrier shall give the employee the opportunity for one change of physician during the course of

treatment for any one accident." Fla. Stat. § 440.13. In providing medical services to injured workers, Florida Workers' Compensation Law mandates that "[a]t all times during evaluation and treatment, the provider shall act on the premise that returning to work is an integral part of the treatment plan." Fla. Stat. § 440.13.

Clearly, the primary purpose of the medical services was for employment purposes - - to return Seide to work at a reasonable cost to Seide's employer. While the medical services undoubtedly had a personal element, they were not "primarily" for personal purposes because they completely arose within an employee-employer relationship and were undertaken pursuant to the Florida Workers' Compensation Law for purposes of employment. *See Muhliesen v. Receivable Recovery Servs., L.L.C.*, 534 Fed. Appx. 232, 233 (5th Cir. 2013) (dismissing appeal, in part, because lower court's determination "that medical bills arising from a federal workers' compensation claim constitute business debts not covered by the FDCPA" was correct and not even "arguable on [its] merits"); *Cassidy v. Madoff*, 818CV00394BKSDJS, 2019 WL 3453937, at *3 (N.D.N.Y. July 31, 2019) (dismissing FDCPA claims arising out of "fines and fees . . . as a result of issues concerning the procurement of worker's compensation premiums"). Seide, having invoked rights under the Florida Workers' Compensation Law and having enjoyed the employer-provided benefits under those laws, cannot now claim that the services those benefits paid for were not primarily for employment purposes. As alleged by Seide, "the only medical services provided to Plaintiff by Defendant-Creditor were for treatment of the Work-Injury." *See* Am. Compl., ¶ 12.

> **C.    *The plain language of the FDCPA, FCCPA and Florida Workers' Compensation Laws militates strongly against construing bills for medical services provided pursuant to Florida Workers' Compensation Law as "Debts" under the FDCPA and FCCPA.***

The plain language of the FDCPA, FCCPA and Florida Workers' Compensation Laws militates strongly against construing bills for medical services provided pursuant to Florida

7

Workers' Compensation Law as "Debts" under the FDCPA and FCCPA. In this regard, Florida Workers' Compensation Law requires employers to "secure the payment to his or her employees, or any physician, surgeon, or pharmacist providing services under the provisions of s. 440.13, of the compensation payable under ss. 440.13, 440.15, and 440.16." Fla. Stat. § 440.10. Thus, the employer is statutorily required to secure the payment of medical debt underlying a workers' compensation claim. Moreover, in section 440.015, Florida Statutes, the Florida Legislature expressly declared that the workers' compensation system is to be "an efficient and self-executing system . . . which is not an economic or administrative burden." Fla. Stat. § 440.015; *Denny's Rest. v. Bell*, 659 So. 2d 1374, 1375 (Fla. 1st DCA 1995) ("the Workers' Compensation Law is intended to be a self-executing employer/carrier monitored system"); *Gonzalez v. Quinco Elec., Inc.*, 171 So. 3d 153, 155 (Fla. 1st DCA 2015) ("the workers' compensation system must 'ensure the prompt delivery of benefits to the injured worker' and must be 'an efficient and self-executing system which is not an economic or administrative burden'") (quoting Fla. Stat. § 440.015).

Under this self-executing system, "the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require." Fla. Stat. § 440.13. Clearly, to do so, the employer must and is expected to communicate with health care providers as to their bills. "In our view, the statute obviously contemplates the receipt of medical information from the physician or other medical care provider." *Holiday Inn v. Re*, 643 So. 2d 13, 15 (Fla. 1st DCA 1994). In fact, among other rights, "[t]he employer has the initial right to select the treating physician." *St. Augustine Marine Canvas & Upholstery, Inc. v. Lunsford*, 917 So. 2d 280, 283 (Fla. 1st DCA 2005). Thus, under the Florida Workers' Compensation law, consistent and regular communications between employers and medical care providers is not only anticipated but required.

Moreover, Florida Workers' Compensation Law also requires medical providers to communicate with multiple parties (other than the employee) concerning the indebtedness. Providers are required to submit bills to the employer's workers compensation carriers. Further, the Florida Workers' Compensation Law requires that, unless denied or disallowed by the carrier, the bills be "timely paid within 45 calendar days after the carrier's receipt of the bill." Fla. Stat. § 440.20. Pursuant to administrative rule, the Florida Department of Financial Services has created a manual for hospitals to use in obtaining "reimbursement for medically necessary services and supplies provided to injured workers in a hospital setting." Fla. Admin. Code Ann. r. 69L-7.501. The manual provides that its purpose "is to furnish providers with the guidelines and procedures needed to submit medical bills to insurers or self-insured employers for services provided in a hospital setting to injured workers and to ensure that insurers receive adequate billing information to make accurate, appropriate payment for services rendered." Manual, p. 7 (https://www.flrules.org/Gateway/reference.asp?No=Ref-04109). Furthermore, Florida Workers' Compensation Law expressly contemplates that hospitals will communicate with persons other than the employee with respect to medical bills. See Fla. Admin. Code Ann. r. 69L-7.710 ("'Billing' means the process by which a health care provider submits a medical claim form or medical bill to an insurer, claim administrator or any entity acting on behalf of the insurer, to receive reimbursement for medical services, goods or supplies provided to an injured employee.").

Moreover, the Florida Legislature expressly has provided that "[i]t is the policy for the administration of the workers' compensation system that there shall be reasonable access to medical information by all parties to facilitate the self-executing features of the law." Fla. Stat. § 440.13. The law requires that "[a] health care provider who renders emergency care must notify the carrier by the close of the third business day after it has rendered such care." Fla. Stat. § 440.13.

To ensure a free flow of communications among a medical provider, the employee, the employer and the carrier, Florida Workers' Compensation Law provides that employees automatically waive physician-patient privileges and that medical providers refusing to provide information to "the employer, the carrier, an authorized qualified rehabilitation provider, or the attorney for the employer or carrier" are subject to penalties. Fla. Stat. § 440.13.

In contrast to the open and free-flowing communications that are statutorily required among the medical provider, employee, employer and carrier under Florida Workers' Compensation Law, if the obligations arising from treatment of injured workers were construed to be "debts" under the FDCPA and the FCCPA, the communications (mandated to occur by Florida Workers' Compensation Law) would be prohibited by the FDCPA and the FCCPA. In this regard, one of the practices prohibited by the FCCPA with respect to a "debt" is communicating or threatening to communicate with the debtor's employer:

> In collecting consumer debts, no person shall:
> . . .
> (4) Communicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection. However, this does not prohibit a person from telling the debtor that her or his employer will be contacted if a final judgment is obtained.

Fla. Stat. § 559.72. So, under the FCCPA, if the obligation to pay for the medical services underlying a workers' compensation claim can be considered "debt," then the FCCPA forbids the medical provider from communicating with the employer concerning it. Similarly, under the FDCPA, "a debt collector may not communicate with a consumer in connection with the collection of any debt— . . . (3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such

10

communication." 15 U.S.C.A. § 1692c. Moreover, "a debt collector may not communicate . . . with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C.A. § 1692c.

The foregoing makes clear that the FDCPA and FCCPA cannot properly be construed as applicable to obligations arising out of the Florida Workers' Compensation Law. Obligations arising out of the Florida Workers' Compensation Law - - like those alleged by Seide with respect to the transaction at issue in this case - - are primarily employment-related. They are not primarily for personal, family, or household purposes. Accordingly, the FDCPA and FCCPA are inapplicable to the transaction at issue and the Amended Complaint properly should be dismissed for failure to state a plausible claim for relief.

### IV. The Amended Complaint Fails to Plausibly State a Claim Because it Lacks Sufficient Allegations of Fact.

The Amended Complaint properly should be dismissed for the additional reason that it fails to contain sufficient factual allegations to state a claim for relief that is plausible rather than merely possible because it fails to allege (A) whether, when and how the alleged work-related injury was determined to be "compensable" under Florida Workers' Compensation Law and (B) how the alleged debt is not legitimate and how the Hospital or the Firm knew same.

#### A. *The Amended Complaint fails to state whether, when and how the alleged work-related injury was determined to be "compensable" under Florida Workers' Compensation Law.*

Florida Workers' Compensation Law only provides benefits for compensable injuries. "'Compensable' means a determination by a carrier or judge of compensation claims that a condition suffered by an employee results from an injury arising out of and in the course of employment." Fla. Stat. § 440.13(1)(d). "Once compensability of an injury is established, a carrier

11

can no longer contest that the accident is the [major contributing cause] of the injury." *Cespedes v. Yellow Transp., Inc. (URC)/Gallagher Bassett Servs., Inc.*, 130 So. 3d 243, 248 (Fla. 1st DCA 2013); *Engler v. Am. Friends of Hebrew Univ.*, 18 So. 3d 613, 614 (Fla. 1st DCA 2009) (same).

The issue of compensability is so critical to the entire statutory scheme that the Department of Financial Services "lacks jurisdiction over a claim for the reimbursement of medical bills until the compensability of the claim is established." *Flagler Hosp., Inc. v. Ass'n Ins. Co.*, 133 So. 3d 644 (Fla. 1st DCA 2014); *Amerisure Ins. Company-FL v. Martin Mem'l Med.*, 67 So. 3d 353 (Fla. 1st DCA 2011); *see also Bryan LGH Med. Ctr. v. Fla. Beauty Flora, Inc.*, 36 So. 3d 795, 796 (Fla. 1st DCA 2010).

Although the Amended Complaint in this case alleges that Seide "suffered an accident and related injuries in the course and scope of Plaintiff's employment," *see* Am. Compl., ¶ 11, and an allegation that Seide filed a petition for workers' compensation benefits, *see* Am. Compl., ¶ 13, the Amended Complaint does not contain any allegation as to whether the carrier or employer accepted or agreed that the injury was compensable or whether there ever has been any determination by a judge of compensation claims that the injury was compensable. In other words, there are no factual allegations as to the critical issue of whether, when and how "compensability" was established.

Under the facts, as pled, it is conceivable that Seide had an injury that had been accepted as compensable by the employer/carrier. But it is equally conceivable that the employer/carrier denied Seide's claim. Under such a factual scenario, Seide would have the option to proceed to incur medical debt personally and seek redress through the civil courts. *See Elliott v. Dugger*, 542 So. 2d 392, 393–94 (Fla. 1st DCA 1989) ("plaintiff injuriously changed his position in reliance upon the defendants' statement that they had no workmen's compensation insurance; that, as a

direct result of the plaintiff's reliance upon the defendants' actions and statements, he made no claim and received no compensation benefits to aid in the support of himself . . . ; **that during this period the plaintiff became personally obligated for the payment of [medical bills]**") (ellipsis in original) (emphasis added); *Byerley v. Citrus Pub., Inc.*, 725 So. 2d 1230, 1232–33 (Fla. 5th DCA 1999) ("In this case, [the injured worker] accepted and relied on the denial, **bore her medical expenses**, then sued the employer in tort as permitted by the statute") (emphasis added).

Another conceivable factual scenario is that the carrier availed itself of its statutory right to investigate the claim for 120 days before it admits or denies compensability. *See* Fla. Stat. § 440.20(4). It should be noted that allegations in the Amended Complaint as to the date of injury and the date of the letter attached to the Amended Complaint (which is alleged to violate the FDCPA and FCCPA) fall within the statutory 120-day investigatory period. If the carrier was uncertain that a compensable injury had occurred, it is unclear how the Hospital or the Firm would have any greater knowledge than the carrier on this issue. Again, it is Seide's burden at the motion to dismiss stage of the litigation to allege sufficient factual matter to state a plausible (as opposed to merely possible) claim. Seide makes no allegations concerning these factual aspects of the claims asserted. Without these critical allegations of fact as to whether, when and how the injury was determined to be "compensable" as that term is defined by Florida Statutes, the Amended Complaint properly should be dismissed because Seide has done nothing more than allege the possibility of a claim but has not "nudge[d] the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

> **B.** *The Amended Complaint fails to allege sufficient facts to as to how the alleged debt is not legitimate and as to the Hospital's or the Firm's knowledge as to same.*

Section 440.13, Florida Statutes, specifically requires the Hospital to provide emergency care to injured workers "[p]ursuant to chapter 395." Section 395.1041, Florida Statutes, in turn, provides "the patient or the patient's legally responsible relative or guardian shall execute an agreement to pay for emergency services or care . . . ." Thus, Florida law requires injured workers to execute an agreement to pay for the emergency medical services provided by the Hospital. Clearly, the Hospital is entitled to be paid for its services whether that payment comes from the patient, from a health insurer, from a workers' compensation carrier or from any other source. A patient can certainly falsely advise the Hospital that coverage is available from any of these sources, but the law does not permit a patient to avoid liability for emergency care so easily. Instead, section 395.1041, Florida Statutes, requires the execution of an agreement to pay for same. Yet, even though Seide was required by law to agree to pay the Hospital, Seide brings this action claiming that Seide's obligation to pay is somehow not legitimate; however, Seide has not alleged a sufficient basis for his claim. For example, Seide has not alleged that, at the time the Firm sent the alleged bill, the Hospital already had received payment. *See Marchisio v. Carrington Mortgage Services, LLC*, 919 F.3d 1288, 1312–13 (11th Cir. 2019) ("Defendant indisputably knew at the time its alleged agent, Southwest, sent the insurance letters that Plaintiffs no longer owned the property and had no outstanding debt."). Seide has not alleged that the medical debt has already been discharged in bankruptcy. *See Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (finding a debt not to be legitimate only after it was discharged in bankruptcy). Without some allegation of fact upon which to assert that the debt was not, in fact, owed and that the Hospital or the Firm knew that the debt was not owed, Seide fails to state a claim. Again, Seide bears the burden of alleging a plausible not merely possible claim.

WHEREFORE, Defendants, Homestead Hospital, Inc. and Pollack & Rosen, P.A., respectfully request the entry of an order dismissing the Amended Complaint filed herein for its failure to state a claim with respect to which relief can be granted along with all other and such further relief as this Court deems appropriate under the circumstances presented.

Respectfully submitted,

ISICOFF RAGATZ
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: ___s/ Matthew L. Lines_____
Eric D. Isicoff
Florida Bar No. 372201
e-mail: Isicoff@irlaw.com
Matthew L. Lines
Florida Bar No. 0243980
e-mail: Lines@irlaw.com

*Counsel for Defendants, Homestead Hospital, Inc. and Pollack & Rosen*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 25th day of March, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/Matthew L. Lines
       Matthew L. Lines

## SERVICE LIST

### *ROBERT SEIDE v. POLLACK & ROSEN, P.A. and HOMESTEAD HOSPITAL, INC.*

### CASE NO.:  0:20-cv-60246-RKA
### United States District Court, Southern District of Florida

Jibrael S. Hindi, Esq.
Jibrael@Jibraellaw.Com
Thomas J. Patti, Esq.
Tom@Jibraellaw.Com
Paul A. Herman, Esq.
Paul@Consumeradvocatelaw.Corn
Joel A. Brown, Esq.
Joel.Brown@Friedmanandbrown.Com